**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 29, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

HUE PHONG YANG,

     Petitioner,

v.

TODD BLANCHE, Acting United States
Attorney General,

     Respondent.*

No. 25-9597
(Petition for Review)

_____

**ORDER AND JUDGMENT***\*

_____

Before **HOLMES**, Chief Judge, **McHUGH**, and **CARSON**, Circuit Judges.

_____

Hue Phong Yang petitions this Court for review of the Board of Immigration

Appeals' ("BIA") order denying his motion to reopen his immigration case and declining

to reopen his proceedings sua sponte.  Exercising jurisdiction under 8 U.S.C. § 1252, we

**deny** Mr. Yang's petition in part and **dismiss** it in part for lack of jurisdiction.

---

     \*     Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting
Attorney General Todd Blanche is automatically substituted for former Attorney
General Pamela Bondi.

     \*\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

# I

Mr. Yang was born at a refugee camp in Thailand to parents of Lao-Hmong descent. In 1976, when he was about eleven-months old, Mr. Yang and his family were admitted to the United States as refugees. Mr. Yang became a lawful permanent resident in 1977.

In 1995, Mr. Yang was charged with "receiving stolen property in violation of California Penal Code § 496(a)" in the Superior Court of California, Fresno County. Administrative Record ("A.R."), at 51 (Mot. to Reopen, filed Aug. 29, 2025). Mr. Yang "was found in possession of property taken during a robbery." *Id.* at 160 (Probation Report, dated June 27, 1995). The stolen property was a 1991 Honda. This offense was deemed an "aggravated felony" due to Mr. Yang's prior law violations. *Id.* at 125 (Removal Proceedings Tr., dated Jan. 20, 1999). Mr. Yang pleaded guilty.

In 1998, the former Immigration and Naturalization Service initiated removal proceedings against Mr. Yang based on his 1995 conviction. *See* 8 U.S.C. § 1227. In 1999, an immigration judge ordered that Mr. Yang be removed. The BIA dismissed Mr. Yang's appeal on June 3, 1999.

In 2025, Mr. Yang filed a motion to vacate his guilty plea pursuant to Cal. Penal Code § 1473.7.[1] A Superior Court of California granted the motion and held that

---

[1]    Cal. Penal Code § 1473.7 states, in relevant part:

A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons: . . . The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to

> [T]he conviction as to these counts is set aside in its entirety on grounds that it was legally invalid due to prejudicial error damaging the moving [Mr. Yang's] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere pursuant to Penal Code section 1473.7(a)(1).

A.R., at 61–62 (Order of Mot. to Vacate Plea, dated July 10, 2025).

On August 29, 2025, Mr. Yang filed a motion with the BIA to reopen his immigration case and terminate removal proceedings against him since the "Superior Court of California [] vacated the sole conviction forming the basis for Respondent's removability." *Id.* at 50. He argued that, "[a]lthough a motion to reopen must generally be filed within 90 days of the final order of removal," equitable tolling was warranted because he could "demonstrate[] both due diligence and extraordinary circumstances." *Id.* at 52. Regarding due diligence, Mr. Yang detailed steps he took to pursue his rights from 2017 to 2025:

> In 2017, while residing in Colorado, Respondent retained Margaret W. Wong & Associates in Ohio to obtain FOIA records from multiple agencies. By March 2018, counsel quoted Respondent $50,000—an amount far beyond Respondent's means—to proceed with this immigration case. Throughout 2018, Respondent contacted numerous non-profit organizations and private attorneys across the United States; however, many declined representation due to the California location of the conviction, and referrals often led to repeated dead ends.
>
> Unfortunately, in 2019, Respondent suffered a heart attack requiring the placement of three stents and the use of ongoing daily medication,

---

> meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel.

3

which severely limited his capacity to pursue legal remedies. Subsequently, in 2020, Respondent's father suffered kidney failure, prompting Respondent to relocate to California in July to provide care. As a result of Respondent's relocation, he had to leave his employment and was unable to afford legal services financially. Accordingly, through the COVID-19 pandemic, Respondent faced economic hardship, employment instability, and eventual housing instability when his family was forced to vacate their rental home. In January 2025, after learning of the increasing detention and deportations of the Hmong and [S]outheast [A]sian community to Laos, Respondent renewed his search for legal assistance. Several consultations followed, one of which, for the first time, informed him of the potential immigration effect of a conviction vacatur. In July 2025, Respondent successfully vacated his 1995 conviction in California.

*Id.* at 52–53. As evidentiary support, Mr. Yang submitted medical discharge paperwork, a lease termination letter, and email correspondence with several attorneys. Regarding extraordinary circumstances, Mr. Yang argued that "California Penal Code § 1473 did not become effective until January 1, 2017," and his "lack of knowledge, combined with the absence of accessible, affordable legal assistance, prevented him from pursuing vacatur until recently." *Id.* at 52.

Alternatively, Mr. Yang argued that, if the BIA deemed his motion to be time-barred, it should reopen his proceedings sua sponte. He pointed to a variety of "exceptional circumstances" that "weigh[ed] heavily in favor of" the BIA exercising its discretion and sua sponte granting relief. *Id.* at 54. These circumstances included "Respondent's continuous residency in the U.S. for over four decades," "Respondent's conviction of removability [having] been vacated on the basis of a procedural defect," and "Respondent now [having] a viable and significant form of relief that was unavailable at the time of the prior proceedings." *Id.*

4

The BIA, acting as a one-judge panel, denied Mr. Yang's motion to reopen. It held that Mr. Yang "ha[d] not established he merit[ed] equitable tolling." *Id.* at 4 (BIA Order, filed Nov. 26, 2025). While the BIA acknowledged Mr. Yang's "various hardships and efforts" such as "medical hardships, employment instability, housing instability, and difficulty securing legal counsel," it reasoned that he had "not satisfactorily explained why his 1995 conviction was not vacated for more than 30 years after the date of conviction." *Id.* at 5. And it highlighted that Mr. Yang did "not explain[] why the instant motion was filed more than 26 years after the Board's final decision." *Id.* Alternatively, the BIA was "unpersuaded" that Mr. Yang's "purported lack of knowledge constitute[d] an extraordinary circumstance" since "[i]t is well settled that ignorance of the law does not excuse an untimely filing." *Id.* at 4. Regarding Mr. Yang's arguments in support of sua sponte reopening, the BIA held that

> Finally, we have considered the respondent's arguments in support of sua sponte reopening and, while the respondent has presented sympathetic circumstances, he has not presented an exceptional situation that warrants the exercise of our sua sponte reopening authority in these proceedings (Respondent's Motion at 4-5). *See* 8 C.F.R § 1003.2(a); *Matter of J-J-*, 21 I&N Dec. at 984 (stating that the power to reopen sua sponte is not meant to be used as a general cure for filing defects or to otherwise circumvent regulations, where enforcing them might result in hardship). We also deny the respondent's request for sua sponte reopening in the exercise of discretion based upon the lack of due diligence. The respondent did not file his motion until more than 26 years after the Board's 1999 decision. The respondent's delay does not reflect diligence, and the interest of finality in immigration proceedings takes precedence under these circumstances. The lack of due diligence militates against a grant of reopening. *See Matter of Nivelo Cardenas*, 28 I&N Dec. 68, 73 (BIA 2020).

*Id.* at 5.

Mr. Yang petitioned this Court for review of the BIA's denial of his motion to reopen and its decision not to reopen his proceedings sua sponte.

## II

"[W]e review the BIA's decision on a motion to reopen [only] for an abuse of discretion. The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004) (alterations in original) (quoting *Gurung v. Ashcroft*, 371 F.3d 718, 720–21 (10th Cir. 2004)). "We consider any legal questions de novo, and we review the agency's findings of fact under the substantial evidence standard." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).

## A

Mr. Yang argues that the "Court should grant [his] petition for review and remand the case to the agency for further proceedings." Aplt.'s Opening Br. at 12. He claims "[t]here is no longer any basis for [his] removal" since the Superior Court of California vacated the conviction on which his removal order was based. *Id.* at 6–8. Mr. Yang contends the BIA erred in denying his motion to reopen for untimeliness. Specifically, according to Mr. Yang, the BIA incorrectly calculated the equitable tolling period for his motion by determining he "did not diligently pursue his claim" and that there was no extraordinary circumstance that prevented him from timely filing it. *Id.* at 8. Additionally, Mr. Yang argues that "[t]hough this Court lacks jurisdiction over the BIA's

6

*sua sponte* decisions, it maintains jurisdiction over legal issues, and here the BIA failed to even attempt to explain its decision." *Id.*

The government argues "the [BIA] acted within its broad discretion when it denied [Mr.] Yang's motion to reopen." Aplee.'s Resp. Br. at 15. It claims "[Mr.] Yang did nothing to undo his conviction for at least 18 years, when he first contacted an attorney about his situation in November of 2017." *Id.* at 15–16. And "[e]ven assuming [Mr.] Yang was foreclosed from seeking post-conviction relief before Cal. Penal Code § 1473.7 was enacted in 2017, he still failed to show he acted with reasonable diligence for the 8 years that passed after § 1473.7 was enacted but before he filed his motion to reopen." *Id.* at 17. The government highlights that the record "shows that he did nothing to pursue his claim in 2019, or from 2022-2024." *Id.* at 18. Additionally, the government argues "[t]he Court lacks jurisdiction to review the Board's decision not to reopen the proceedings *sua sponte* because there are no meaningful standards by which to judge the Board's unfettered discretion to use its *sua sponte* authority." *Id.* at 21.

**B**

"An alien may file one motion to reopen proceedings . . . ." 8 U.S.C. § 1229a(c)(7)(A). "The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." *Id.* § 1229a(c)(7)(B). "The Board has discretion to deny a motion to reopen even if the moving party has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a). "Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a

new trial on the basis of newly discovered evidence." *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992).

Such motions "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." *Galvez Pineda v. Gonzales*, 427 F.3d 833, 838 (10th Cir. 2005) (quoting 8 C.F.R. § 1003.2(c)(2)). "The 90-day period may be extended, however, by equitable tolling." *Id.* "Equitable tolling is appropriate where the movant shows (1) that [he] has been pursuing [his] rights diligently, and (2) that some extraordinary circumstance stood in [his] way and prevented timely filing." *Estrada-Cardona v. Garland*, 44 F.4th 1275, 1287 (10th Cir. 2022). "The respondent bears the burden of persuasion to show that equitable tolling is warranted, including demonstrating due diligence in seeking reopening." *Berdiev v. Garland*, 13 F.4th 1125, 1132 (10th Cir. 2021) (quoting A.R. 30 (citing *Galvez Pineda*, 427 F.3d at 838–39)).

"Our jurisdiction extends to a BIA decision denying a motion to reopen as untimely and rejecting a request for equitable tolling." *Id.* at 1130. "In contrast, this Court generally lacks jurisdiction to review a BIA decision as to whether to reopen sua sponte, 'because there are no standards by which to judge the agency's exercise of discretion.'" *Id.* (quoting *Jimenez v. Sessions*, 893 F.3d 704, 708–09 (10th Cir. 2018)). "But where the BIA 'may have declined to exercise its sua sponte authority because it misperceived the legal background and thought, incorrectly, that a reopening would necessarily fail,' we may exercise limited jurisdiction to 'remand to the BIA so it may exercise its [sua sponte] authority against the correct legal

background.'" *Estrada-Cardona*, 44 F.4th at 1286 (alteration in original) (citations omitted) (first quoting *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009); then quoting *Pllumi v. Att'y Gen.*, 642 F.3d 155, 160 (3d Cir. 2011)). In other words, we may "remand where the BIA bases its discretionary decision on an incorrect legal premise." *Berdiev*, 13 F.4th at 1130; *see* 8 U.S.C. § 1252(a)(2)(D) (stating that we have jurisdiction over "review of constitutional claims or questions of law raised upon a petition for review").

**1**

The ninety-day deadline for Mr. Yang to file a motion to reopen expired years before he filed his motion. Thus, absent equitable tolling, reopening is not warranted under 8 C.F.R. § 1003.2. We conclude equitable tolling is inappropriate because Mr. Yang failed to show that he pursued his rights diligently. Because the BIA did not abuse its discretion in concluding that Mr. Yang failed to show due diligence, we do not address whether some extraordinary circumstance prevented timely filing.

Mr. Yang provided no evidence or argument to the BIA of what he did to diligently pursue his rights prior to 2017. Instead, he argued that, because Cal. Penal Code § 1473.7 became effective on January 1, 2017, he need only have acted with due diligence from that date forward. We assume, for purposes of this appeal only, that he is correct. But even so, Mr. Yang has not shown that from January 1, 2017—when Cal. Penal Code § 1473.7 became effective—to August 29, 2025—when he filed his motion to reopen—he acted with due diligence in seeking reopening. *See Mahamat v. Gonzales*, 430 F.3d 1281, 1283 (10th Cir. 2005) ("For an untimely claim

to receive the benefit of equitable tolling, . . . an alien must demonstrate . . . that the alien has exercised due diligence in pursuing the case during the period the alien seeks to toll." (quoting *Iavorski v. INS*, 232 F.3d 124, 135 (2d Cir. 2000))).

For instance, the record reflects that from 2017–2025, there are gaps in which Mr. Yang did nothing to diligently pursue his rights. Mr. Yang attempts to account for these gaps by pointing to other circumstances such as (1) being hospitalized for five days in 2019 after having a heart attack; (2) taking care of his father who experienced kidney failure and passed away in 2020; (3) and having the lease for his house terminated with only 60 days' notice in 2023. But, as the government acknowledges, Mr. Yang "did nothing to pursue his claim" from 2022–2024. Aplee.'s Resp. Br. at 18. Thus, we cannot say it was an abuse of discretion for the BIA to hold that these circumstances did not establish that Mr. Yang diligently pursued his rights from January 2017 to August 2025. While perhaps the record clearly shows Mr. Yang diligently pursued his rights occasionally, it does not show that he diligently pursued them consistently throughout the relevant period.

Additionally, Mr. Yang acknowledges in his motion to reopen that "[i]n January 2025, after learning of the increasing detention and deportations of the Hmong and [S]outheast [A]sian community to Laos, Respondent *renewed* his search for legal assistance." A.R., at 53 (emphasis added); *see also* Aplt.'s Opening Br. at 9–10 ("In January of 2025, Petitioner heard word that the government had again beg[u]n the removals to Laos of those among the Hmong and [S]outheast Asian community. He thus continued his search for legal remedies, and for the first time,

10

during one of many consultations, an attorney mentioned that he could possibly vacate his conviction." (citation omitted)). In other words, even after Cal. Penal Code § 1473.7 went into effect, there was a period in which Mr. Yang stopped diligently pursuing his rights. But then he later started again for *strategic reasons*—i.e., the heightened risk of detention and deportation of members of the Hmong and Southeast Asian community, a group in which he belonged. Such strategic decisions do not justify a failure to act with due diligence. *See Galvez Pineda*, 427 F.3d at 839 ("The Piñedas claim that it was only after receiving the respondent's answer brief . . . that they made a 'strategic decision' to file a grievance against their first counsel and a subsequent motion to reopen. But that is precisely the point. It was a 'strategic decision,' not necessity, that led them to forgo a motion to reopen . . . ." (citation omitted)).

Thus, Mr. Yang has failed to show that he pursued his rights diligently. Accordingly, we deny this portion of his petition for review and hold that the BIA did not abuse its discretion by concluding equitable tolling was unwarranted.

**2**

As explained *supra*, we do not have jurisdiction to review the BIA's exercise of discretion in declining to sua sponte reopen removal proceedings. *See Salgado-Toribio v. Holder*, 713 F.3d 1267, 1270–71 (10th Cir. 2013) ("Petitioner . . . challenges the BIA's holding that Petitioner had not presented an exceptional situation warranting *sua sponte* reopening of his removal proceedings. But our precedent clearly forecloses any review of that discretionary decision."). However, we do have jurisdiction to review whether, in

11

exercising its discretion, the Board relied on an erroneous understanding of a question of law. Therefore, if Mr. Yang raised a question of law, we could consider that. But he does not.

Mr. Yang's only argument regarding the BIA's failure to reopen his proceedings sua sponte is that "the BIA did not address why the vacatur of a conviction was not an exceptional situation that would warrant *sua sponte* reopening . . . . Though this Court lacks jurisdiction over the BIA's *sua sponte* decisions, it maintains jurisdiction over legal issues, and here the BIA failed to even attempt to explain its decision." Aplt.'s Opening Br. at 7–8. He seemingly wants us to hold that the BIA abused its discretion because its decision was "devoid of any reasoning[] or contain[ed] only summary or conclusory statements." *Infanzon*, 386 F.3d at 1362 (quoting *Gurung*, 371 F.3d at 720–21). But that type of discretionary decision (i.e., how much explanation or analysis is necessary) is not within our jurisdiction. *See Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007) ("We have construed § 1252(a)(2)(D)'s 'constitutional claims or questions of law' language to reach . . . 'constitutional and statutory-construction questions, not discretionary or factual questions.'" (quoting *Diallo v. Gonzales,* 447 F.3d 1274, 1281–82 (10th Cir. 2006))); *Mendiola v. Holder*, 576 F. App'x 828, 838 (10th Cir. 2014) (unpublished)[2] ("[I]n reviewing the BIA's decision whether or not to reopen removal

---

[2]     *See, e.g.*, *United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022) ("We deem the reasoning of the unpublished decisions cited herein to be persuasive and instructive. We do not accord them controlling weight and recognize that they are not binding on us.").

proceedings sua sponte, our review is constrained by our limited jurisdiction; we review only constitutional claims and questions of law.").  This is not a purely legal argument and therefore cannot serve as our jurisdictional basis for our review of the BIA's exercise of discretion in declining to sua sponte reopen Mr. Yang's proceedings.

Accordingly, we do not have jurisdiction to review any aspect of the BIA's sua sponte decision because Mr. Yang points to no incorrect legal premise on which the decision was based.  We dismiss this portion of Mr. Yang's petition.

### III

We **deny** Mr. Yang's petition in part and **dismiss** it in part for lack of jurisdiction.

Entered for the Court


Jerome A. Holmes
Chief Judge